FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 29, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BARBARA DAVIS, as Personal Representative of the Estate of G.B., deceased,<br><br>                    Plaintiff,<br><br>        v.<br><br>WASHINGTON STATE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, TOM STOKES, individually and in his official capacity, and the marital community comprised thereof, JEREMY KIRKLAND, individually and in his official capacity and the marital community comprised thereof, JANE DOE STOKES, and the marital community comprised thereof, and JANE DOE KIRKLAND, and the marital community comprised thereof,<br><br>                    Defendants. | No.    2:18-cv-00194-SMJ<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, is the "State Defendants' Motion for Summary Judgment," ECF No. 94. Defendants Tom Stokes and Jeremy Kirkland seek summary judgment on Plaintiff's negligence claims arising out of the death of Plaintiff's grandchild, G.B. *Id.* Plaintiff opposes the motion. ECF No. 104

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 1

at 2. Having reviewed the motion and the file in this matter, the Court is fully informed. For the reasons that follow, the Court denies the motion.

## BACKGROUND[1]

This case arises out of the tragic death of G.B., a minor child, in April 2015 while in the custody of his aunt, Cynthia Khaleel. *See* ECF No. 1-2 at 9–10. Heidi Kaas was G.B.'s primary social worker from June 2011 to mid-December 2014. ECF No. 17 at 2. Sarah Oase supervised Kaas from 2012 until August 30, 2014. ECF No. 17 at 2. Defendant Jeremy Kirkland supervised Kaas from September 1, 2014 to mid-December 2014. ECF No. 16 at 2.

On September 3, 2014, after an extended visit with Khaleel, the dependency court ordered that G.B., then a ward of the State, be placed with Khaleel. ECF No. 17 at 3; ECF No. 16 at 3. Kaas documented required monthly health and safety visits with G.B. in Port Angeles, Washington for the months of May, June, July, August, September, and December 2014, and in Chattaroy, Washington in October and November 2014. ECF No. 16 at 2–5; ECF No. 17 at 2–3. During those months, Kaas documented no safety concerns for G.B. ECF No. 16 at 2–5; ECF No. 17 at 2–3.

Defendant Kirkland states in his declaration that before he began supervising Kaas, he did not know G.B. was on her caseload. ECF No. 16 at 3. At his deposition,

---

[1] The detailed factual background of G.B.'s death is set forth in the Court's November 29, 2018 Order, ECF No. 62, and the Court finds it unnecessary to repeat that general background in full here.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 2

1   Kirkland testified that during his transition to supervisor, Oase told him Kaas had

2   "what's called a PMR, which is kind of a disciplinary record," and had "issues . . .

3   with health and safety visits and documentation and filing." ECF No. 25-21 at 6.

4   Kirkland elaborated that Kaas's "[d]ocumentation wasn't always input timely into

5   [the DSHS database]." *Id.* Kirkland testified that when he began supervising Kaas,

6   he did not "know of any concerns that she was just making up visits or that they

7   didn't occur even though she wrote them down;" he said the concerns were "[j]ust

8   timeliness and then filing was an issue and making referrals on time for clients to

9   services." *Id.*

10       Kirkland held required monthly supervisor meetings with Kaas on

11   September 4 and October 15, 2014. ECF No. 16 at 3–4. On each occasion, Kaas

12   voiced no safety concerns for G.B. *Id.* Sometime after their October 15, 2014

13   meeting, Kirkland noticed that Kaas documented conducting required monthly

14   health and safety visits both with G.B. and his younger brother and also with his

15   younger half-sister on the same day. *Id.* at 4. Given the distance between the two

16   towns where the children were located, Kirkland asked Kaas about her

17   documentation. *Id.* She said she must have made an error when documenting those

18   visits. *Id.* Kirkland accepted Kaas's explanation and did not at that time suspect she

19   was falsifying her case notes. *Id.*

20       Sometime after his November 21, 2014 supervisor meeting with Kaas,

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 3

Kirkland received information that Kaas might be falsifying her case notes. *Id.* at 5. He reviewed her files, including her documented health and safety visits. *Id.* Kirkland showed Kaas her case notes documenting visits with G.B. and his siblings on the same date. *Id.* Kaas admitted to Kirkland that she falsified those case notes and did not visit G.B. in October 2014. *Id.*

In November or December 2014, Kirkland gave the information he gathered regarding Kaas to his supervisor, Stokes, who launched an investigation. *Id.*; ECF No. 19 at 3; ECF No. 25-21 at 11. Before that time, Stokes did not suspect Kaas of falsifying her case notes. ECF No. 19 at 3. In mid-December 2014, Stokes removed Kaas from all casework and her employment at DSHS ended at some point in 2015. ECF No. 19 at 3.

On December 12, 2014, the Spokane DSHS office received a referral alleging Khaleel had possibly abused G.B. ECF No. 16 at 5. After completing an investigation, DSHS closed the abuse referral as unfounded. *Id.* at 6. Only after the referral did Stokes learn the Spokane DSHS office had not yet been asked to perform courtesy supervision for G.B. or conduct a home study on Khaleel's home. ECF No. 19 at 3; ECF No. 25-22 at 14–15. The courtesy supervision request was sent shortly after and the Spokane DSHS office approved it on December 23, 2014. ECF No. 16 at 6, 61–62.

In late December 2014, Susan Steiner became G.B.'s new primary social

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 4

worker in the Port Angeles DSHS office. ECF No. 16 at 6; ECF No. 18 at 2. Kirkland supervised Steiner after she became G.B.'s social worker. ECF No. 16 at 6; ECF No. 18 at 2. Steiner reviewed G.B.'s file and saw that the dependency court had placed him with Khaleel, but she did not see a request that the Spokane DSHS office perform courtesy supervision for G.B. or conduct a home study on Khaleel's Chattaroy home. *Id.* In late December 2014 or early January 2015, Steiner submitted both requests to the Spokane DSHS office. *Id.*; ECF No. 56 at 15.

On January 27, 2015, the Spokane DSHS office assigned a courtesy social worker for G.B. while Spokane social worker James Desmond began work on the Khaleel home study. ECF No. 16 at 7; ECF No. 25-18 at 2. The deadline for Desmond to complete the ninety-day home study was April 27, 2015. *See* ECF No. 25-18 at 2–3.

On February 3, 2015, Desmond emailed Steiner and Kirkland with concerns about the Khaleel home study. *Id.* Kirkland forwarded the email to Stokes. ECF No. 25-22 at 20; ECF No. 56 at 16. Desmond said the purpose of the email was to provide "an update as to the status of the home study." ECF No. 25-18 at 2. He explained the information he had so far came from a meeting with Khaleel, a telephone call with her husband, from whom Khaleel was separated, and some database research. *Id.* Desmond then described "areas where I will need to get more information from the parties involved before I can write a report." *Id.* He clarified

"the information those parties provide in the future might explain the circumstances with no negative concerns." *Id.* After describing his concerns, Desmond reiterated, "I need to have an opportunity to discuss these areas before I can move forward with approving or denying the home study." *Id.* at 3.

By February 18, 2015, Desmond had not received required home study paperwork from Khaleel or her husband. *Id.* at 4–5. In an email, Steiner and Desmond discussed the possibility of instituting a relative guardianship, which would require that Khaleel's home become a licensed foster home and that the children reside in the licensed placement for six months. *Id.* But Desmond announced, "[t]he home as it stands now (Single mother caring for 6 children, several with special needs) is very unlikely to pass a foster home licensing home study." *Id.* at 4. He identified "several other circumstances involved with Cynthia Khaleel which, on first examination, appear to be negative factors." *Id.* Desmond declared, "Unless those are explained in a positive way, it is not likely her placement home study will be approved as it is. This may change after I get information from Cynthia and her husband, but as I said there has not been anything back from them yet." *Id.* G.B. died on April 18, 2015 from injuries he allegedly sustained in Khaleel's home. ECF No. 18 at 5.

On April 16, 2018 G.B.'s grandmother, on behalf of G.B.'s estate and statutory beneficiaries of the Estate, brought this action against the Washington State

Department of Social and Health Services ("DSHS") and two employees. ECF No. 1-2. Defendants filed this motion on May 22, 2020, seeking summary judgment only as to Plaintiff's negligence claims against Defendants Stokes and Kirkland. ECF No. 94.

## LEGAL STANDARD

The Court must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to the nonmoving party. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). Thus, the Court must accept the nonmoving party's evidence as true and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255. The Court may not assess credibility or weigh evidence. *See id.* Nevertheless, the nonmoving party may not rest upon the mere allegations or denials of its pleading but must instead set forth specific facts, and point to substantial probative evidence, tending to support its case and showing a genuine issue requires resolution by the

finder of fact. *See Anderson*, 477 U.S. at 248–49.

## DISCUSSION

### A.    Objections to Reply

After Defendants filed their reply, Plaintiff filed an objection, asking the Court to strike pages four through five of Defendants' reply. ECF No. 111. Specifically, Plaintiff alleged Defendants' arguments that Stokes and Kirkland did not owe G.B. a duty of care were raised for the first time in their reply. *Id.* at 2. Defendants responded to the objection, asserting they had raised the arguments in the original motion and that, even if the original summary judgment motion did not raise the issue of duty, Plaintiff's responsive pleadings expressly claim that Defendants owed G.B. a legal duty, and so Defendants were entitled to respond to that argument. ECF No. 113 at 1–2.

Defendants briefed the legal standards applicable to the duty, breach, and causation elements of negligence in their motion for summary judgment. ECF No. 94 at 4–7. However, in each section discussing the claims at to Stokes and Kirkland specifically, Defendants used general language regarding Plaintiff's failure to meet her burden. *See id.* at 7–8. For example, as to Kirkland, the motion states Plaintiff cannot "present sufficient competent evidence that (1) Kirkland personally committed a negligent act or omission with regard to the investigation of allegations of abuse or neglect, or G.B.'s placement with Kahleel, and (2) that

1    any alleged negligent act or omission by Kirkland was a proximate cause of the

2    injuries being claimed by the Estate." *Id.* at 7–8. Similarly, for Stokes, the motion

3    states Plaintiff cannot "present sufficient competent evidence that (1) Kirkland

4    personally committed a negligent act or omission with regard to the investigation

5    of allegations of abuse or neglect, or G.B.'s placement with Kahleel, and (2) that

6    any alleged negligent act or omission by Kirkland was a proximate cause of the

7    injuries being claimed by the Estate." *Id.* at 8.

8        Although Defendants' motion is not perfectly clear as to whether they were

9    challenging both the existence of a duty and the breach of that duty, the Court

10   understands "committed a negligent act or omission" to mean both the duty and

11   breach. As such, the Court denies Plaintiff's objection regarding whether

12   Defendants owed G.B. a duty of care. Given Plaintiff's misunderstanding of the

13   motion, the Court would ordinarily permit supplemental briefing on the issue of

14   duty. However, because the Court finds Defendants have failed to show that there

15   no genuine issue of material fact exists as to each of the elements of Plaintiff's

16   negligence claims, summary judgment is not appropriate and no further briefing is

17   necessary.

18   **B.    Negligence Claims**

19       Defendants assert Plaintiff "cannot establish that Jeremy Kirkland breached

20   a duty owed" and that "[a] a complete lack of evidence mandates dismissal of the

1    claims against Tom Stokes." ECF No. 94 at 7–8. Plaintiff argues that issues of

2    material fact preclude summary judgment. ECF No. 104 at 2.

3          The elements of a negligence claim are duty, breach, causation, and damages.

4    *Hansen v. Friend*, 824 P.2d 483, 485 (Wash. 1992). Under Washington common

5    law, DSHS is subject to both a common law and statutory duty of care. *See M.W. v.*

6    *Dep't of Soc. & Health Servs.*, 70 P.3d 954, 959–60 (Wash. 2003). "DSHS owes a

7    duty of reasonable care to protect foster children from abuse at the hands of their

8    foster parents." *H.B.H. v. State*, 429 P.3d 484, 487 (Wash. 2018).

9          Washington courts also recognize that the obligation to investigate under

10   Revised Code of Washington § 26.44.050 "implies a cause of action for children

11   and parents for negligent investigation in certain circumstances." *M.W.*, 70 P.3d

12   at 957 (quoting *Tyner v. Dep't of Soc. & Health Servs.*, 1 P.3d 1148, 1154–55

13   (Wash. 2000)). This implied duty requires DSHS to act reasonably when

14   investigating reports of child abuse or neglect. *Tyner*, 1 P.3d at 1155. The duty is

15   triggered when DSHS receives a report of previous or existing abuse or neglect, but

16   not on receipt of allegations of potential future neglect. *Wrigley v. State*, 455

17   P.3d 1138, 1144 (Wash. 2020).

18         Thus, a child, parent, or guardian may assert a claim for negligent

19   investigation where "DSHS has gathered incomplete or biased information that

20   results in a harmful placement decision, such as removing a child from a nonabusive

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 10

home, placing a child in an abusive home, or letting a child remain in an abusive home." *M.W.*, 70 P.3d at 960.

There are two elements of proximate cause: cause in fact and legal causation. *Tyner*, 1 P.3d at 1155–56. Cause in fact exists when "but for" the defendant's actions, the Plaintiff would not have been injured. *Id.* at 1156. This is typically a factual question presented to a jury, but it may be resolved as a matter law where a reasonable jury could reach only one conclusion. *H.B.H.*, 387 P.3d 1093, (Wash. Ct. App. 2016) *aff'd* 429 P.3d 484, 487 (Wash. 2018). "Mere speculation or argumentative assertion of possible counterfactual events is insufficient to prove that but for the defendant's breach of duty, the plaintiff would not have been injured." *Id.*

### 1.    Duty of Care

As to whether Stokes and Kirkland owed G.B. a duty of care, Defendants presented no particularized argument asserting that no duty of care arose under statutory or common law. *See* ECF No. 94 at 7–8. In their reply, Defendants argue Plaintiff has failed to "bring forth sufficient, competent evidence to establish either Ms. Kirkland or Mr. Stokes individually became legal custodians of G.B. or personally assumed the responsibility to ensure his safety." ECF No. 108 at 5. However, Defendants have not briefed the legal issue of whether individual employees must take specific steps to become legal custodians in order to trigger

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 11

their duties under statutory or common law.[2] The Court declines to make such a legal determination where the issue has not properly been presented to the Court.

It is uncontested that Kirkland served as a social worker supervisor and directly supervised Heidi Kaas from September 1, 2014 until late December 2014 and then supervised Susan Steiner after December 2014. ECF No. 110 at 1–2. It is also uncontested that Stokes supervised Sarah Oase, Heidi Kaas's former supervisor, and Jeremy Kirkland. *Id.* at 2. Defendants also do not contest that "the State of Washington, through DSHS, owes a duty to dependent foster children." ECF No. 379 at 4 n.2. Plaintiff has cited evidence showing that Stokes was required to approve Khaleel's background check prior to G.B.'s placement and to approve G.B.'s placement with Khaleel generally. ECF No. 103 at 5. Plaintiff has also cited evidence Kirkland, as Kaas's supervisor, was aware she did not consistently enter documentation in a timely matter and that she failed to make timely referrals for services to clients. ECF No. 25-21 at 6. Thus, Defendants have failed to show there

---

[2] Defendants cite *H.B.H. v. State*, 429 P.3d 484, 496 (Wash. 2018), and *C.L. v. State Dep't of Soc. & Health Servs.*, 402 P.3d 346, 350 (Wash. 2017), to support the proposition that "[w]hile the State of Washington, through DSHS, may owe dependent foster children a duty in tort neither decision supports the imposition of either duty on an individual DSHS employee that has not individually assumed the legal custody or the responsibility for the safety of a dependent child." ECF No. 379 at 5. However, these cases indicate that the special relationship between DSHS and dependent children as the basis for a duty in tort, neither case directly addresses the issue of when such a duty arises for individual DSHS employees. *See H.B.H.*, 429 P.3d at 496; *C.L.*, 402 P.3d at 350.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 12

is no dispute over material fact as to whether Defendants Stokes and Kirkland owed

G.B. a duty of care.

### 2.    Breach of Duty and Causation

As to Stokes, Defendants assert that "Stokes served as the DSHS (now

DCYF) Area Administrator for Clallam County in 2014-2015" and that he

"supervised Sarah Oase and Jeremy Kirkland in 2014 and 2015 but had no direct

contact with G.B., or involvement in his placement with Khaleel." ECF No. 94 at 8.

Defendants assert "Stokes fulfilled his Area Administrator duties and promptly

became involved when it was apparent issues existed with Kaas' reporting and

documentation." *Id.* As to Kirkland, Defendants assert that "Kirkland served as a

social worker supervisor for the Department and was assigned to supervise Heidi

Kaas starting September 1, 2014 through late December, 2014 and Susan Steiner

from late December, 2014 through the end of G.B.'s dependency." *Id.* at 7.

Defendants also assert "Kirkland (1) conducted his supervisory reviews with both

Kaas and Steiner, (2) took appropriate action when he had reason to believe he could

no longer trust Kaas' reporting, (3) had no reason to question Steiner's

representations and the documentation of the services she provided when she was

assigned to the dependency, and (4) ensured ongoing coordination between the

Spokane and Port Angeles offices." *Id.*

However, Plaintiff's claim against Stokes centers on his approval of G.B.'s

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT – 13

urgent placement with Khaleel despite the fact that there was no need for an urgent placement, and in approving Kaas's negligently-conducted background check. ECF No. 104 at 4. Plaintiff cites evidence that Stokes, as Area Administrator, was required to approve G.B.'s urgent placement into the Khaleel home as well as approve the background check on Khaleel. ECF No. 26-3 at 3. Plaintiff also cited evidence that Khaleel had two prior referrals that were not identified in the background check. ECF No. 25-24.

Similarly, Plaintiff's claims against Kirkland are grounded in his failure to determine that no home study had been conducted, as well as his failure to intervene despite knowledge that Kaas failed to contact the Spokane DSHS office to inform them G.B. was in their area and request courtesy supervision. ECF No. 104 at 5. Plaintiff also cites evidence that Kirkland, while supervising Kaas, knew there had not been a request for courtesy supervision, contrary to DSHS policy.[3] *Id.* at 8.

Plaintiff cites evidence that if G.B.'s urgent placement had not been approved, then the home study would have been completed prior to G.B.'s placement. ECF No. 26-3 at 2. Plaintiff has also identified evidence that the Khaleel home study was not likely to be approved, even excepting her failure to submit

---

[3] Plaintiff also cites to the same evidence to support her assertion that Kirkland knew there had not been a home inspection. ECF No. 103 at 5. However, a review of the evidence cited indicates Kirkland stated he was unaware that no home study had been requested. ECF No. 25-21 at 9.

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 14

required paperwork. ECF No. 25-10 at 11; ECF No. 25-16 at 7–9. Thus, there are material facts in dispute as to whether the failure to conduct an earlier home study caused G.B. to be in the Khaleel home at the time he was allegedly killed. Defendants accordingly have failed to show there is no dispute of material fact as to whether Defendants Stokes and Kirkland breached a duty of care owed to G.B. and whether that breach caused his death.

## CONCLUSION

Defendants have failed to show there is no dispute of material fact as to any of the elements of Plaintiff's negligence claims against Defendants Stokes and Kirkland. As such, summary judgment is not appropriate, and the motion is denied.

Accordingly, **IT IS HEREBY ORDERED**:

Defendants' Motion for and Memorandum in Support of Summary Judgment, **ECF No. 94**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 29th day of July 2020.

SALVADOR MENDOZA, JR.
United States District Judge

ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – 15